Our final case of the day is Sennholz v. Strahota. Good afternoon. Mr. Rose. Yes, thank you. May it please the Court, I am Attorney Christopher Rose. I represent the petitioner in Pellant in this case, Everett M. Sennholz. And the case, as we've briefed it, has somewhat of a long history. It went through post-conviction motions in the trial court, eventually to the Court of Appeals, and a habeas petition to the District Court. And we are now appealing the District Court's decision. The issues in this case are important. This was a stem from allegations that, frankly, were decades old, from the late 1989 to early 1993. So the case was brought after nearly 20, 25 years. And the issues at play here are as follows. The first has to do with what the petitioner considers the key witness, or one of the key witnesses in the State's case, which was one, Detective Miles. Now, Detective Miles was the lead investigator in this case. He took the initial complaint from the complainant, E.M., and he was the last witness who was called by the State at the end of their case. In this particular instance, Detective Miles was questioned, and in his testimony offered the following, that he believed that E.M., who was the complainant in this case, was very believable, was very truthful, and was genuinely upset when he spoke to her. And, again, this was the last witness that the State had called. Okay. So, Mr. Rose, the problem here, when this is framed as an ineffective assistance claim, as you know, is the Wisconsin courts are telling us that if he had objected, as you say he should have, the evidence would have come in. Well, I understand that's what they are saying, but our position – That's what the State courts have said, isn't it? That's what the State courts have said. That's correct. The district court, though, when it analyzed the issue, although it didn't specifically say, well, this was directly a vouching issue, it did say it would have been better for them not to comment on the demeanor of the witness. But it's still, the bottom line is, our position is that the Strickland analysis here does apply, because it's – and our position is that this was clearly what is commonly known as a Hassettine objection when you were commenting on believability and truthfulness of a witness. Right. And I've – And that's why I cited Rose. If this were happening in front of a – in a trial in front of me, I suspect I would have handled this a little differently. But this is a matter of, as it's presented to us, State evidence law, and the State courts are telling us there's no error. Well, that's what the State courts are saying, but I don't believe the State – On a matter of State law. Why is that not conclusive here? Well, I don't – because of the – well, I cited Earls v. McCoffrey, I believe, for our position in this case. And in Earls v. McCoffrey, that dealt with the issue of when, in that instance, there was an expert witness, I believe it was a social worker, who specifically testified that the victim, or the complainant in that case, was very believable and very truthful. And, again, in the Earls case, that – although it was, again, it referenced Hassettine, which is a matter of State law. It said it was very clear that this was something that should have been readily apparent to the attorney at the time that the testimony came in. And the attorney, I believe, on post-conviction motions also testified, and testified that he had no – he could offer no reason why he did not object. And the same thing happened here on post-conviction motions when we had the defendant's attorney. So, forgive me, Mr. Mink. Jeanne, you know, you've characterized the case as a credibility determination between E.M. and Sennholz. But it seems to me there was significant corroborating evidence as well here of E.M.'s version, including the notes, you know, that were written at the time of the abuse years ago, and a tape recording of Sennholz apparently acknowledging the actions. So, you know, we have to factor all of that in as well. Well, I understand what you're saying. And my point that I was making was that the case dealt with credibility only. As I said when I began, that this was a decades-old case. It wasn't as if this was something that just happened recently. So there was no physical evidence. Credibility was the key issue. And I agree that there were witnesses who testified for E.M., but there were also witnesses who testified for Mr. Sennholz, including, I believe, which I mentioned in my reply and in my original brief, which was B.H., which was the aunt, who disputed key parts of E.M.'s testimony when she testified at trial that E.M. testified that she had confided in Ms. Houghton, B.H., about the sexual assaults that occurred. And the aunt testified, clearly, no, that never happened. So there is other evidence, I agree, but there was evidence on both sides. In reference to the tape that is concerned, I don't believe the tape is actually before or was included as part of the record. However, what I would note about the tape, because it was referenced in the brief of the state, and I have mentioned this previously, the petitioner here who testified in his own defense, and again, as I stated before, it is a credibility issue, that tape, he never once said on that tape, oh, I had committed sexual assaults against E.M. And, in fact, when confronted about that tape, he specifically testified that he was trying to get her office back, it was a secretly recorded conversation, and that, in fact, he had a reasonable explanation. But I disagree that the only issue was credibility between E.M. and Mr. Senholz. In fact, what I was saying was the whole case boiled down to that. And why I was saying the lead detective who testified at the end of the state's case, why his testimony was so important is because he said she was very believable, very truthful, genuinely upset. He went even beyond that and wasn't even questioned. He then mentioned Mr. Senholz when he first confronted Mr. Senholz. He wasn't willing to speak to me. Oh, and by the way, when confronted about allegations of sexual assault, he wasn't surprised. So this witness went well beyond the pale when he was testifying, and he was clearly testifying credibility. That's why I'm saying there really isn't any issue of state law to interpret it because it's very clear. It's a Haseltine violation. And because of that, this key witness. Maintain that there was no way for, you know, another view, which is that there wasn't vouching going on. There was, you know, an evaluation of a complainant's report and assessing whether there was a basis for further investigation, et cetera, et cetera. Well, I understand that that is what the state's position is, but what I'm saying is that when you look at the entirety of the testimony, its entirety, no, I don't believe that his testimony was going directly to the investigation or what did it lead to next. I think it was very, very clear what he was doing. If you look at the entirety of the testimony, as I said, he was the key in the case. So that is one issue. I see that I'm getting short on time. But the other issue, of course, is the issue of the closing argument, which we believe also violated due process and rebuttal. What in the prosecutor's argument hinted that she had some kind of special knowledge? Well, when she was giving her rebuttal argument and she used the term, I'm begging you, don't let him get away with this any day longer. Is there a constitutional difference between asking and begging for a conviction? Well, I think there is, because in this particular instance, when you're saying, I'm the prosecutor. I am begging you, myself personally, to not let him get away with this any day longer. That is something personal. That's personal to the person who's giving the argument. And it's different than just simply saying, I ask based on all the evidence to find you guilty beyond a reasonable doubt. And she went beyond just saying, I'm begging you. She said, smoke and mirrors, this is what a defense attorney has to do, and other things. Red herring, trying to distract you from the real issues. I hear that all the time in closing arguments. Is that unconstitutional? Pardon me? Are those sorts of comments unconstitutional? Well, I think it depends upon the context of the comments, and I guess that's what I'm saying here, the context of the comments. Oh, if she had said, please, please, please, please. Well, again, I think it went beyond please. I think it was more personal, and it was more than just stating begging. Thank you. Thank you, counsel. Mr. Whitworth. Good afternoon. May it please the Court. Two claims of ineffective assistance are presented here. Neither warrants the extraordinary relief of granting the writ. As has been discussed here, the first claim at its core doesn't involve a federal issue. It's about whether the state courts properly interpreted a state evidentiary rule in deciding an ineffective assistance claim. To grant relief would thus require this Court to second-guess the state court's evaluation of state law. In essence, this Court would be saying that the state court's decision on its own law was unreasonable, which is beyond the scope of payments. What did Detective Miles' wrap-up testimony contribute to the proof? Excuse me? What did his wrap-up testimony contribute to the proof of the prosecution? It provided some context for how the investigation took place. And how is that relevant to the defendant's guilt or innocence? You need to remember that we have a series of cases in the Seventh Circuit holding that it's not and cannot be admitted, which is, I think, likely what my colleague said earlier, that if this were in a federal prosecution, this evidence would not have come in. Okay, okay. I respect that. And, in fact, poses serious confrontation clause problems, often. Not the way this came in. But when police officers start testifying about the course of their investigation, they start talking about the information they received from informants and tipsters and so on. And it's not relevant to anything, and it just opens a floodgate for unconstitutional evidence. Right. My impression of this testimony is that it really is not relevant to the rest of the proceedings. It was not significant. But there's no confrontation problem because both the police witness and the victim were there. Sure, yes. There's no confrontation issue in this case here that's presented by this issue. Obviously, no confrontation issue has been briefed here on habeas either. It certainly is significant. I mean, isn't there a significant threat that a jury would, you know, defer to the detective's determination of credibility? What I can't see is how his characterization of her truthfulness would be necessary to any description of his investigation. Otherwise, we'd have police officers getting on the stand all the time, and they would be saying things like, the reason I continued my investigation and the reason we're here today is because she's truthful. Well, I'm failing to see the Federal constitutional issue here because there are some states that do allow witnesses to testify about the credibility of other witnesses at trial. And Hazeltine itself is not a Federal constitutional question. So while I appreciate that there may be some confrontation issues with having a police officer testify in, quote, wrap-up testimony, first of all, that issue has not been raised in this case. And secondly, it's been presented as a Hazeltine violation, which is a state evidentiary question, and it's not a question of constitutional dimension. So moving to the next issue, the second claim alleges impermissible vouching and closing argument. That fails because, first, the trial counsel made a reasonable strategic decision not to object to the prosecutor's remarks. Second, because those remarks weren't vouching under any standard. They were not an opinion about the credibility of a witness. I don't see how begging shows personal knowledge or personal opinion about credibility. They didn't suggest that the prosecutor had secret facts that were not presented at trial. And perhaps most importantly, there was strong evidence of Senholtz's guilt that was presented in this case, and that's relevant to prejudice under Strickland and also prejudice under Darden. As this court has repeatedly held, evidence of guilt is the most important factor in determining whether a prosecutor's remarks rendered the trial unfair. Here you have the victim's allegations, which are, of course, bolstered by Senholtz's admission, various admissions. He said that he hoped that he wouldn't do it again when he was challenged by the victim. His apologies to her in the secretly recorded conversation, and by the contemporaneous notes that the victim and her best friend wrote about the assaults, as you pointed out, Judge Rogner. Senholtz, in his reply brief and in his opening brief, relies heavily on Earls, but he seems to ignore the fact that there were two claims in Earls. The one that's identical in posture to this case was resolved in the state's favor. State courts denied the Strickland claim in Earls upon concluding that there would have been no grounds to object because the testimony was inadmissible under Wisconsin law. So there was determination under Wisconsin law that this testimony was admissible under one of the Earls claims. This court said that it wouldn't second-guess that determination. Again, to do so would effectively be for this court to say that a state law determination was unreasonable by the state courts, and that's contrary to habeas. Again, on the second issue, there was nothing in the prosecutor's remarks that was improper. And even if improper, there was strong evidence of Senholtz's guilt. And for that reason, it would be difficult for any court, particularly a court on habeas review, to say that the proceedings were unreasonable. If this court has no further questions, thank you. I'll just ask that you confirm. Thanks to both counsel. The case is taken under advisement, and the court will be in recess.